IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-170-BO

LESLIE COHEN and THOMAS COHEN, )
)
               Plaintiffs, )
)
v. )   O R D E R
)
NORCOLD, INC., *et al.*, )
)
               Defendants. )

This matter comes before the court for ruling on Plaintiffs' motions to compel responses to their written discovery requests from Defendants Norcold, Inc., ("Norcold"), Thetford Corporation ("Thetford") and Dyson-Kissner Corporation ("DKM") (altogether "Norcold Defendants") and motions to strike filed by the Norcold Defendants.[1] All briefing is complete and the court has held hearings on the motions.[2] For the reasons set forth below each of the motions is allowed in part and denied in part.

## I. BACKGROUND

Plaintiffs seek to recover damages suffered as a result of a fire that occurred on March 18, 2017, allegedly caused by a defective Norcold-branded Series 1210 gas absorption refrigerator

---

[1] Motion to Compel Further Answers to Plaintiffs' First Set of Interrogatories [DE-74]; Motion to Strike and Objections to the Declaration of Terrence A. Beard [DE-83]; Motion to Compel Further Responses to Request for Production of Documents [DE-89]; Motion to Strike and Objections to Beard Declaration [DE-95].

[2] Notwithstanding the 1,560 pages that have been filed in connection with these pending motions, the briefing in this case does not appear to be in conformity with the local rules of practice. Plaintiffs have filed multiple documents containing argument far exceeding the briefing pagination limits for discovery motions. Much of the briefing breaks down to simply refer the court to hundreds of pages of attachment included in the motions, which has proven to be counter productive to efficiently resolving the motions. Counsel, including local counsel, are cautioned to adhere to the local rules of practice, which have been designed to facilitate the presentment of disputed issues to the court for a just a speedy determination. *See* Fed. R. Civ. P. 1.

installed in Plaintiffs' 2011 Keystone Montana Model 3455 Fifth-Wheel ("RV"). Second Am. Compl. [DE-101] ¶ 1. According to Plaintiffs, their Norcold-branded Series 1210 gas absorption refrigerator was designed, manufactured, and placed into the stream of commerce by the Norcold Defendants and was identical in design to the other 178,000 Norcold-branded 1200 Series refrigerators put into the marketplace between December 1996 and October 2012. *Id.* ¶ 2. Plaintiffs allege these products were dangerously defective in design when first put on the market and remained dangerously defective at all times thereafter. *Id.* According to Plaintiffs, the Norcold Defendants' sale of defective refrigerators and the concealment of their dangers has been aided and abetted by Defendant Holiday Kamper. *Id.* ¶ 6. Plaintiffs allege Holiday Kamper is an integral part of the Norcold Defendants' supply chain through the sale of RVs containing defective gas absorption refrigerators and its servicing and retrofitting of defective Norcold-branded gas absorption refrigerators. *Id.* According to Plaintiffs, all Defendants had actual knowledge of the refrigerators' dangerous defects and took affirmative steps to conceal the risks and dangers inherent in the refrigerators from owners, federal regulators, and the general public. *Id.* ¶ 3. Plaintiffs allege Defendants' defective gas absorption refrigerators have caused over 3,000 fires over the last fifteen years. *Id.* ¶ 4.

According to Plaintiffs, Holiday Kamper was the original owner of their RV, having purchased it as new in or about 2010, and then relative to fire prevention retrofitted the refrigerator with a High Temperature Sensor (HTS) device pursuant to a NHTSA recall in 2011. *Id.* ¶ 63. Plaintiffs allege further that Holiday Kamper sold the RV to its first purchaser in 2011. *Id.* When Plaintiffs purchased their RV as used in 2014 it was already equipped with the Norcold 1210 gas absorption refrigerator which had been installed as original equipment. *Id.*

On March 17, 2017, Plaintiffs were living in their RV and noticed the refrigerator was not cooling properly. *Id.* ¶ 64. Plaintiffs found information on the internet and discovered for the first time that the Norcold Defendants had initiated recalls on their gas absorption refrigerators. Plaintiffs contacted the Norcold Defendants and were informed that the refrigerator was subject to recall, that an HTS device retrofit had been performed by a prior owner, and that as long as the recall retrofit had been performed, "they were fine." *Id.* The Norcold representative never told Plaintiffs to turn off the refrigerator, nor were they informed of any risk or danger in continuing to use their refrigerator. *Id.*

The following day, on March 18, 2017, Plaintiff Leslie Cohen observed fire coming out of the refrigerator vents on the outside of their RV. *Id.* ¶ 65. As a result of the fire, the RV and its contents were substantially destroyed, and Leslie suffered personal injuries and damages. *Id.* ¶¶ 65–66.

Plaintiffs have asserted claims for negligence (¶¶ 82–96) and breach of a duty to warn (¶¶ 97–101) against all Defendants. As against the Norcold Defendants, Plaintiffs have asserted additional claims of negligence per se (¶¶ 102–07), breach of post-sale duty to conduct adequate recall and retrofit (¶¶ 108–11), and fraud by concealment (¶¶ 112–13). Plaintiffs seek compensation for the damages sustained in the fire against all Defendants jointly and severally. *Id.* ¶ 7.

Plaintiffs served on the Norcold Defendants written interrogatory and document requests to which the Norcold Defendants objected and which are the subject of Plaintiffs' motions to compel. Plaintiffs have included in support of each of their motions an affidavit from their counsel which is the focus of the Norcold Defendants' motions to strike.

3

## II. DISCUSSION

### A. Motions to Strike

Rule 7.1 of the Local Civil Rules of Practice and Procedure in this district provide in relevant part:

> **(i) Affidavits.** Ordinarily, affidavits will be made by the parties and other witnesses and not by counsel for the parties. However, affidavits may be made by counsel for a party if the sworn facts are known to counsel or counsel can swear to them upon information and belief, and
>     **(1)** the facts relate solely to an uncontested matter; or
>     **(2)** the facts relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the facts; . . . .

Local Civ. Rule 7.1(i).

The Norcold Defendants have moved to strike portions of paragraph 4 and paragraphs 7 and 9 from counsel's first affidavit, [DE-75], and an exhibit and paragraphs 8 and 9 from counsel's second affidavit, [DE-90-1]; [DE-92] (as amended). In summary, Defendants object to counsel's characterization of prior litigation over Norcold's refrigerators that is described in the affidavits. It is clear to the court, however, that the affidavits have been submitted not to argue the nature or outcomes of those case, but to rebut Defendants' objections as to the relevancy of Plaintiffs' discovery requests or the availability of certain documents Plaintiffs are seeking. The court construes the motions as Defendants' objection to the court's consideration of the affidavits in the court's ruling on the pending motions to compel, rather than a motion to strike a pleading. *See* Fed. R. Civ. P. 12(f) (motion to strike applies to pleadings). While the affidavit statements by counsel regarding prior litigation appear to run afoul of Local Rule 7.1(i)(1) and (2), the information within the affidavits does not appear to violate the rule. Accordingly, the motions are allowed in part and denied in part, and the court will discount counsel's description of the prior litigation but will
4

consider the substance of the affidavits as it relates to the availability or relevance of discovery sought.

## B.     Motions to Compel

Rule 26 provides the general rule regarding the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Relevancy under this rule has been broadly construed to encompass any possibility that the information sought may be relevant to the claim or defense of any party." *Prasad v. Nallapati*, — F. Supp. 3d —, 2022 WL 1051293, at *2 (E.D.N.C. 2022) (first quoting *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007); then citing *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978))). "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory or to produce or make available for inspection requested documents. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). However, the Federal Rules also provide that the court must limit the frequency or extent of discovery otherwise allowed by these rules or by

5

local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). "Additionally, the court has 'substantial discretion' to grant or deny motions to compel discovery." *English v. Johns*, No. 5:11-CT-3206-D, 2014 WL 555661, at *4 (E.D.N.C. Feb. 11, 2014) (quoting *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)). Finally, the party seeking the court's protection from responding to discovery "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Prasad*, 2022 WL 1051293, at *2 (quoting *Mainstreet Collection*, 270 F.R.D. at 240).

## 1. Interrogatories

Plaintiffs' interrogatory request to each Norcold Defendant is identical, and each Norcold Defendant made separate, varied objections to each interrogatory.[3]

> Interrogatory No. 2. Identify, by Incident Log number, each fire claim involving a N6/N8/1200 Series Norcold gas absorption refrigerator listed in your Incident Log as of the date of your responses to these discovery requests, wherein you determined that the refrigerator was the origin of the fire.

[DE-84-1] at 5. Knowledge of other fire claims regarding Defendants' gas absorption refrigerator is relevant to Plaintiffs' claims of negligent design for purposes of discovery. *See Hershberger v. Ethicon Endo-Surgery, Inc.*, No. 2:10-CV-00837, 2012 WL 1113955, at *2 (S.D. W. Va. Mar. 30,

---

[3] At the hearing the court sustained Defendants' objections and denied Plaintiffs' motion as to Interrogatory No. 1. Plaintiffs' motion to compel does not appear to include Interrogatory No. 12 and the Norcold Defendants indicate that the basis for the interrogatory, Plaintiffs' Requests for Admission, have been withdrawn by Plaintiffs. [DE-76, -84-1]. Per the court's discussion with the parties, Interrogatory Nos. 15 and 16 have been removed from the motion pending Defendants' supplementation of their responses.

2012) ("It is fairly well-established that evidence of similar incidents may be relevant as direct proof of negligence, a design defect, notice of a defect, or causation.") (citing *Jiminez v. DaimlerChrysler Corp.*, 269 F.3d 439, 456 (4th Cir. 2001); *United Oil Co., Inc. v. Parts Assocs., Inc.*, 227 F.R.D. 404 (D. Md.2005); *Buckman v. Bombardier Corp.*, 893 F. Supp. 547, 552 (E.D.N.C. 1995)). Plaintiffs have alleged that Norcold's N6, N8, and 1200 Series refrigerators are similarly designed. Second Am. Compl. [DE-101] ¶ 34. According to Defendants DKM and Thetford, neither maintains an incident log in connection with Norcold Refrigerators nor has either determined any refrigerator was the origin of any fire. [DE-84-2] at 5; [DE-84-3] at 5; *see Georgia-Pac. Corp. v. Von Drehle Corp.*, No. 5:05-CV-478-BO, 2007 WL 9637134, at *1–2 (E.D.N.C. Aug. 17, 2007) (absent evidence to the contrary, "[t]he court must take [a party's] word that it has produced all responsive discoverable documents if [the party] says that it has."). While Defendant Norcold maintains an incident log, it responds that it does not record the cause or origin of fires and is unable to identify claims responsive to this interrogatory. [DE-84-1] at 5. In rebuttal, however, Plaintiffs have provided what is purported to be the Rule 30(b)(6) deposition testimony of John Roberts, a representative of Defendant Norcold during a 2019 lawsuit regarding fires and its gas absorption refrigerators.[4] According to Roberts, Norcold keeps track of fire claims regarding its model 1200 refrigerators through an incident log wherein it is able in some capacity to identify fires for which it takes responsibility, including those where it determines fires were caused by its refrigerator. [DE-75-14] at 5. The court finds this information persuasive in part. Although Norcold asserts that the incident log is subject to a protective order limiting its use, Norcold has failed to provide the court with the

---

[4] The court has sustained Defendants' objections to the description of the outcome of this lawsuit but not the import of Roberts' testimony.

7

terms of such protective order, and the court construes this as a boilerplate objection which is overruled. Norcold has also asserted a boilerplate objection on the grounds of attorney client or work product doctrine which the court finds unpersuasive. *See Montgomery v. CSX Transportation, Inc.*, No. SAG-14-1520, 2015 WL 6560447, at *9 (D. Md. Oct. 28, 2015) (finding objections "inappropriate because they invoke the attorney-client privilege and work product protections but fail to specify, beyond a boilerplate assertion of those doctrines' potential applicability, how the information sought is protected."). The court sustains in part Defendant Norcold's objections that the interrogatory is overly broad and disproportionate to the needs of this particular case. Accordingly, Defendant Norcold shall provide a response to this interrogatory as it relates to its N6/N8/1200 Series gas absorption refrigerator for fire claims corresponding to the time period three years prior to the incident alleged in this case.

> Interrogatory No. 3. For each fire claim identified in your response to Interrogatory No. 1, identify and describe in detail the basis for your determination that the N6/N8/1200 Series Norcold gas absorption refrigerator was the origin of the fire.

[DE-84-1] at 6. Defendants' objections are sustained. Interrogatory No. 1 does not call for information about any fire claim. The court is not required to rewrite discovery requests and declines to do so here. See *Armour v. Santos*, 19-cv-678-RJD, 2022 WL 16572006, at *2 (S.D. Ill. Nov. 1, 2022) ("[C]ourts are not required to rewrite discovery requests, and frequently decline to do so."); *Elwyn Robinson v. PPG Industries, Inc. et al.*, CV19040330DWRAOX, 2021 WL 4497222, at *6 (C.D. Cal. July 23, 2021); *Settlemyer v. Borg-Warner Morse TEC, LLC*, 1:19 CV 344 MR WCM, 2021 WL 66411, at *3 (W.D.N.C. Jan. 7, 2021); *Ye v. Cliff Veissman, Inc.*, 14-CV-01531, 2016 WL 950948, at *4 (N.D. Ill. Mar. 7, 2016); *Annex Books, Inc. v. City of Indianapolis*, 103CV00918SEBTAB, 2011 WL 13305341, at *3 (S.D. Ind. Feb. 18, 2011).

> Interrogatory No. 4. Identify, by Incident Log number, each fire claim involving a N6/N8/1200 Series Norcold gas absorption refrigerator listed in your Incident Log as of the date of your responses to these discovery requests, wherein you determined that the refrigerator was the cause of the fire.

[DE-84-1] at 6. For the same reasons stated with respect to Interrogatory No. 2, Defendant Norcold's objections are sustained in part and it shall provide a response to this interrogatory as it relates to its N6/N8/1200 Series Norcold gas absorption refrigerators for fire claims dated three (3) years prior to this incident alleged in this case.

> Interrogatory No. 5. For each fire claim identified in your response to Interrogatory No. 4, identify and describe in detail the basis for your determination that the N6/N8/1200 Series Norcold gas absorption refrigerator was the cause of the fire.

[DE-84-1] at 7. According to Defendants DKM and Thetford, neither determined any Norcold Refrigerator was the cause of any fire. [DE-84-2] at 7; [DE-84-3] at 7. For the same reasons provided above in response to Interrogatory No. 2, Defendant Norcold's objections are sustained in part and it shall provide a response to this interrogatory as it relates to its N6/N8/1200 Series Norcold gas absorption refrigerators for fire claims dated three (3) years prior to this incident alleged in this case.

> Interrogatory No. 6. Identify, by Incident Log number, the total cumulative number of fire claims involving a N6/N8/1200 Series Norcold gas absorption refrigerator listed in your Incident Log, as of the date of your responses to these discovery requests, as of the following dates:
>
> - May 15, 2000
> - October 18, 2001
> - March 1, 2002
> - July 1, 2002
> - December 31, 2005
> - March 125 [sic], 2008
> - April 15, 2009
> - October 1, 2010
> - October 1, 2012
> - March 18, 2017

9

- October 1, 2021

[DE-84-1] at 7–8. Objections by Defendants DKM and Thetford on the ground neither has responsive information are sustained. [DE-84-2] at 7; [DE-84-3] at 7. Defendant Norcold's objections to this interrogatory on the grounds that it is overly broad and disproportionate to the needs of this case are sustained as to all dates requested except the date of the alleged fire in this case. Defendant Norcold shall provide responsive information as of March 17, 2017, the date of the incident alleged in this case.

> Interrogatory No. 7. Identify, by Incident Log number, each fire claim involving a 1200 Series Norcold gas absorption refrigerator that was equipped with a HTS device at the time of the fire.

[DE-84-1] at 8. Neither Thetford nor DKM maintains an incident log in connection with Norcold refrigerators and their objections are sustained. Other fire claims regarding the 1200 Series Norcold gas absorption refrigerators that were equipped with the same retrofit device as Plaintiffs' refrigerator are relevant to Plaintiffs' claims in this case. Defendant Norcold's objections are overruled in part and Norcold is directed to provide responsive information to this interrogatory for the three year period prior to the incident alleged in this case.

> Interrogatory No. 8. Identify, by Incident Log number, each fire claim involving a 1200 Series Norcold gas absorption refrigerator that was equipped with the 2012 Redesign Cooling Unit at the time of the fire.

*Id.* Neither Defendants DKM nor Thetford maintains an incident log in connection with Norcold refrigerators and their objections are therefore sustained. [DE-84-2] at 8; [DE-84-3] at 8. Plaintiffs do not allege their refrigerator was equipped with a 2012 Redesign Cooling Unit nor does it appear that the refrigerator in their RV contained one. Ex. N, ¶ 5 [DE-97-3]. Plaintiffs contend however, that the interrogatory seeks relevant information because it provides the basis to test statements made

10

by a Norcold Corporate representative during a 2019 deposition in a case involving a Norcold gas absorption refrigerator. Where Plaintiffs have failed to direct the court to any such testimony or statement in *this* case, the court finds the interrogatory seeks information not relevant to any claim in this case. Defendant Norcold's objection on the basis of relevance is sustained.

> Interrogatory No. 9. Identify, by Return Date, Serial Number and Model Number, each Norcold 1200 Series refrigerator listed in your warranty/return databases that was equipped with an HTS device at the time the refrigerator was returned to your custody and control.

[DE-84-1] at 9. Defendant DKM responds that it does not maintain any warranty/return databases in connection with Norcold refrigerators and its objection is sustained. Defendant Thetford incorporates Norcold's responses to this interrogatory. [DE-84-2] at 9; [DE-84-1] at 9. Defendants object further on the grounds that the cooling unit of Plaintiff's refrigerator was never returned to Norcold under warranty, and that returns are made for many reasons including those not relevant to the issues in this case. [DE-85] at 7. The court finds this interrogatory relevant in part. Accordingly, Defendants Thetford and Norcold shall provide a response to this interrogatory as it relates to model 1200 gas absorption refrigerators returned three (3) years prior to this incident alleged in this case.

> Interrogatory No. 10. Identify, by Incident Log number, each fire claim involving a 1200 Series Norcold gas absorption refrigerator wherein you determined that the HTS device prevented a fire.

[DE-84-1] at 9. Knowledge of other fire claims and the performance of the HTS retrofit device is relevant to Plaintiffs' claims. According to Defendants DKM and Thetford, neither maintains an incident log in connection with Norcold Refrigerators, nor have they determined any refrigerator was the origin of any fire. [DE-84-2] at 9; [DE-84-3] at 9. The court incorporates its ruling as to Interrogatory No. 2 and for the reasons therein sustains Norcold's objections in part. Accordingly,

11

Defendant Norcold shall provide a response to this interrogatory as it relates to its model 1200 gas absorption refrigerators for fire claims dated three (3) years prior to this incident alleged in this case.

> Interrogatory No. 11. Identify the officers, directors and shareholders of each of the Norcold Defendants from 2013 to the date of your responses to these interrogatories, including their respective capacities, e.g., "Chairman and CEO of DKM"; "Member, Board of Directors of Thetford"; "Secretary and General Counsel of Norcold".

[DE-84-1] at 9. Plaintiffs contend this interrogatory is relevant to the disputed issue of whether the Norcold Defendants are separate and independent entities or are a single entity controlled by Defendant DKM and that the identify of corporate officers is particularly relevant in light of DKM's sale of Norcold and Thetford to a private equity firm. [DE-74] at 5; Second Am. Compl. [DE-101] ¶¶ 11–24; Norcold's Answer [DE-103] ¶¶ 11–24. Objections by the Norcold Defendants are sustained in part. The court finds the interrogatory is overly broad and not relevant to the extent it seeks the identity of shareholders. The Norcold Defendants shall provide responsive information as it relates to corporate officers and directors during the requested time period.

> Interrogatory No. 13. Identify, by Incident Log number, each fire claim involving a N6/N8/1200 Series Norcold gas absorption refrigerator listed in your Incident Log as of the date of your responses to these discovery requests, wherein you determined that the HTS Device was improperly installed.

[DE-84-1] at 10. This interrogatory seeks information relevant to Plaintiffs' claim the HTS retrofit device on their refrigerator was improperly installed. Second Am. Compl. [DE-101] ¶¶ 69, 72. According to Defendants DKM and Thetford, neither maintains an incident log in connection with Norcold Refrigerators and their objections are sustained. [DE-84-2] at 10; [DE-84-3] at 10. Defendant Norcold shall provide a response to this interrogatory as it relates to its N6/N8 and 1200 gas absorption refrigerators for fire claims dated three (3) years prior to this incident alleged in this case. Although Norcold asserts that the incident log is subject to a protective order limiting its use,

12

Norcold has failed to provide the court with the terms of such protective order and the court construes this a boilerplate objection which is overruled. Otherwise, the court sustains Defendant Norcold's objections and finds the interrogatory to be overly broad and disproportionate to the needs of this particular case.

> Interrogatory No. 14. Identify and describe all investigation and/or testing you conducted – or had other persons conduct at your direction and/or request – regarding alternative designs for Norcold 1200 Series gas absorption refrigerator Cooling Units, specifically including, but not limited to, Cooling Unit boiler tube assemblies.

[DE-84-1] at 11. Defendants have asserted boilerplate objections which are denied. The interrogatory seeks relevant information. Accordingly, Defendants are directed to provide information responsive to this interrogatory corresponding to the time period up to the date of the fire alleged in the complaint.

### 2. Document Requests[5]

> Request No. 1. All documents which identify the refrigerator, Cooling Unit and HTS device, including, but not limited to, the refrigerator's model, serial number, Cooling Unit serial number, HTS device version, and date of manufacture of each.

[DE-97-2] at 5. This Request seeks relevant documents. Defendants DKM and Thetford indicate they have no responsive documents. *See Georgia-Pac. Corp.*, 2007 WL 9637134, at *1– 2. The court overrules and sustains in part Defendant Norcold's objections. To the extent not already provided, Defendant Norcold shall produce all responsive documents which reflect the manufacture,

---

[5] Throughout the discovery requests addressed herein, objection has been made on the grounds that a protective order precludes the production of such information or that the information sought is appropriate for a protective order. However, where no protective order has been entered in this case, nor has any party moved for one, and where the court has not been provided a copy of any protective order entered elsewhere addressing discovery sought in this case, such objections do not preclude otherwise permissible discovery. Additionally, the court finds unpersuasive the boilerplate objection made throughout these requests on the grounds they call for the production of information precluded from discovery by attorney-client privilege or work product doctrine where nothing more than the assertion has been provided. Nothing in this order, however, precludes any party from moving for the entry of a protective order regarding the documents covered by this order.

testing, sale, and recall work performed on the refrigerator in Plaintiff's RV at issue in this case, including any incident claim documentation.

> Request No. 2. All documents regarding or relating to the design, manufacture, sale, installation, distribution, repair, recall, retrofit and/or replacement of the Refrigerator, including all correspondence and/or communications with the Original Equipment Manufacturer the Refrigerator was sold to, and all correspondence and/or communication with any person who owned the RV into which the Refrigerator was installed, including the Plaintiffs.

[DE-97-2] at 6. This Request seeks relevant documents. Defendants DKM and Thetford indicate they have no responsive documents. *See Georgia-Pac. Corp.*, 2007 WL 9637134, at *1–2. The court overrules and sustains in part Defendant Norcold's objections. To the extent not already provided, Defendant Norcold shall produce all responsive documents relating the Plaintiff's refrigerator that is at issue in this case.

> Request No. 3. A complete and unredacted Incident Log, in both paper and native electronic format (Excel) including, but not limited to, all incidents regarding Norcold N6/N8 refrigerators, Norcold 1200 Series refrigerators, including the Refrigerator, and Norcold Cooling Units, beginning with the incident recorded in the Incident Log field named "Log #" as "Log #1", and including all subsequent Incident Log entries through the date of your responses to these requests for production. For purposes of identification, an earlier electronic version of this document was produced by you in *Nix vs. Norcold/Thetford/DKM*, Sacramento County Superior Court No. 34-2014-00168143-CU-PL-GDS, bates-stamped NRC_NIX_000121, and in *Williams vs Norcold/Thetford/DKM*, Sacramento County Superior Court No. 34-2016-00191256, entitled "Copy of Incidents Log Revised 4_16 (09_07_16)". For purposes of this document production request, "complete electronic version" includes any and all tabs, folders, workbooks contained within the Incident Log Excel spreadsheet, and all updated entries to the database through the date of your answers to these document requests.

[DE-97-2] at 6. This Request seeks relevant documents. Defendants DKM and Thetford indicate they have no responsive documents. *See Georgia-Pac. Corp.*, 2007 WL 9637134, at *1–2. The court overrules and sustains in part Defendant Norcold's objections. Defendant Norcold shall

14

produce responsive documents as it relates to its N6/N8 and Model 1200 refrigerator corresponding to the period of time three (3) years proceeding the incident alleged in this action.

> Request No. 4. Complete and unredacted copies of all Incident Files regarding Norcold N6/N8 refrigerators, Norcold 1200 Series refrigerators, including Incident Log No. 9139 regarding the refrigerator, and Norcold Cooling Units, beginning with Incident File No. 8961, and including all Incident Files created and numbered thereafter through the date of your responses to these requests for production. For purposes of this document production request, "Incident File" shall include all original, full color, full resolution, digital camera electronic photograph files (e.g., ".jpeg" or ".jpg" format), contained or referred to in each Incident File, whether those photographs are reproduced in the file, or contained on a CD, flashdrive or some other media. For purposes of identification, Incident Files created before Incident File No. 8961 were produced by you in Williams vs. Norcold/Thetford/DKM, Sacramento County Superior Court No. 34-2016-00191256 (bates- stamped NOR_WILLIAMS_GREEN 001000 – NOR_WILLIAMS_GREEN 03775), in Nix vs. Norcold/Thetford/DKM, Sacramento County Superior Court No. 34-2014-00168143-CU-PL- GDS (bates-stamped NIX-GREEN-8000-0001 through NIX-GREEN-8400-0005).

[DE-97-2] at 7. This Request seeks relevant documents. Plaintiffs state that they already have all of the Incident Files regarding N6/N8/1200 Series refrigerator fire claims prior to September 2016, which Norcold Defendants produced in other litigation. [DE-89] at 7. Defendants DKM and Thetford indicate they have no responsive documents. *See Georgia-Pac. Corp.*, 2007 WL 9637134, at *1– 2. The court overrules and sustains in part Defendant Norcold's objections. Defendant Norcold shall produce responsive documents as it relates to its N6, N8 and Model 1200 refrigerator corresponding to the period of time three (3) years proceeding the incident alleged in this action.

> Request No. 5. The complete electronic version (Excel spreadsheet format) of the database you maintain regarding and relating to N6/N8 and 1200 Series refrigerators/Cooling Units returned from the field, current through the date of your responses to these document requests. For purposes of identification, an earlier electronic version of this document was produced by you in *Reis vs. Norcold/Thetford*, Contra Costa County Superior Court No.: C10-02740, bates stamped NOR 014179 – NOR 014386, and a paper copy of this document was

15

marked as Plaintiffs' Trial Exhibit No. 30 in the same litigation. For purposes of this
document production request, "complete electronic version" includes any and all
updated entries to the database through the date of YOUR answers to these document
requests.

[DE-97-2] at 7. This Request seeks relevant documents. Defendant DKM indicates it has no responsive documents. *See Georgia-Pac. Corp.*, 2007 WL 9637134, at *1– 2. The court overrules and sustains in part objections by Defendant Thetford and Norcold. Defendants shall produce responsive documents as it relates to its N6, N8 and Model 1200 refrigerator corresponding to the period of time three (3) years proceeding the incident alleged in this action.

Request No. 6. A complete and unredacted copy of Incident File No. 2129.

[DE-97-2] at 8. Defendants DKM and Thetford indicate they have no responsive documents. *See Georgia-Pac. Corp.*, 2007 WL 9637134, at *1– 2. Defendant Norcold's objections are sustained. According to Plaintiffs, the requested documents relate to a fire that occurred in 2005, which is 15 years before the incident alleged in this case, and is beyond the scope of relevancy. Moreover, Plaintiffs already have a copy of the incident file according to their own representation. [DE-89] at 7; *see* Fed. R. Civ. P. 26(b)(2)(C)(i) (the court must limit discovery sought that is unreasonably cumulative or duplicative).

Request No. 7. A complete copy of the Defendants' respective corporate minute
books from January 1, 1997 to date.

[DE-97-2] at 8. This Request seeks documents relevant to Plaintiffs' claims regarding corporate control. Defendants have asserted boilerplate objections, which are overruled, and Defendants shall provide documents responsive to the Request corresponding to the time period dating from the date of the alleged incident in this case to the present.

16

Request No. 8. Complete and unredacted corporate organization charts evidencing both the internal organization of Norcold, Thetford, and DKM, and the corporate organization – including ownership and control – between Norcold, Thetford and DKM.

*Id.* at 9. This Request seeks documents relevant to Plaintiffs' claims regarding corporate control. Defendants have asserted boilerplate objections, which are overruled, and Defendants shall provide documents responsive to the Request corresponding to the time period from the date of the alleged incident in this case to the present.

Request No. 9. Documents sufficient to identify all officers, directors and shareholders of Norcold, Thetford and DKM from January 1, 2008 thru [sic] the date of your responses to these discovery requests.

*Id.* This Request seeks documents relevant in part to Plaintiffs' claims regarding corporate control. Defendants' objections are overruled in part, and Defendants shall provide documents responsive to the Request as it relates to officer and directors corresponding to the time period from the date of the alleged incident in this case to the present.

Request No. 10. All documents, including sign-in/attendance sheets, agendas, minutes, exhibits, reports, and presentations – of Executive Committee meetings from January 1, 2009 through the date of your responses to these discovery requests.

*Id.* This Request seeks documents relevant to Plaintiffs' claims regarding corporate control. Defendants' objections are overruled in part, and Defendants shall provide documents responsive to the Request as it relates to the time period from the date of the alleged incident in this case to the present.

Request No. 11. All documents, including sign-in/attendance sheets, agendas, minutes, exhibits, reports, and presentations – of Liability Team Meetings from January 1, 2009 through the date of your responses to these discovery requests.

*Id.* at 10. This Request seeks documents relevant to Plaintiffs' claims regarding corporate control.

17

Defendants' objections are overruled in part, and Defendants shall provide documents responsive to the Request as it relates to the time period from the date of the alleged incident in this case to the present.

> Request No. 12. All documents, including raw data, reports, photographs and video of testing conducted by you, or on your behalf, regarding alternate designs for the boiler tube assembly of Norcold-branded N6/N8/1200 Series gas absorption refrigerators, from January 1, 2009 through the date of your responses to these discovery requests.

*Id.* Defendants DKM and Thetford indicate they have no responsive documents. *See Georgia-Pac. Corp.*, 2007 WL 9637134, at *1–2. Defendant Norcold makes boilerplate objection to this Request in part because no protective order has been entered in this case and that the production of such documents should be subject to such an order. *See* [DE-97] at 7–8. In fact, Norcold is willing to produce responsive documents once an agreed protective order is in place. *Id.* at 8. Norcold's objections are overruled. Defendant shall provide responsive documents.

> Request No. 13. All documents, including raw data, reports, photographs and video of testing conducted by you, or on your behalf, regarding alternate designs for the HTS Device – including alternate designs to the muffler clamp used to attach the HTS Device to Cooling Unit boiler tubes, and alternative designs to prevent the HTS Device from being improperly installed and/or bypassed, from October, 2010 through the date of your responses to these discovery requests.

[DE-97-2] at 11. Defendants DKM and Thetford indicate they have no responsive documents. *See Georgia-Pac. Corp.*, 2007 WL 9637134, at *1–2. For the same reasons states with respect to Request No. 12, Defendant Norcold shall provide responsive documents.

> Request No. 14. All documents regarding or evidencing "Service and Management Agreements" entered into or in effect between Patterson Planning and Services, Inc. and Norcold, Thetford, and/or DKM from 1997 to the date of your responses to these discovery requests, including all amendments, attachments and exhibits thereto. For purposes of identification, this request seeks the separate shared services agreements referenced in Paragraph 10 of the affidavit of Michael J. Harris, dated July 21, 2020,

18

and filed as Doc. 116-1 in *Harter vs. Norcold, et al.*, United States.

[DE-97-2] at 11. Defendants have objected to this request on the grounds that it is overly broad and not reasonably limited in time or scope and seeks confidential or proprietary information, among other reasons. Plaintiffs argue these documents are relevant to the issue of corporate organization and to the interrelationship among the three defendants, how Defendants operated to introduce the gas absorption refrigerators into the stream of commerce, as well as notice and knowledge regarding safety defects. Finally, Plaintiffs argue that responsive documents have been produced by Norcold Defendants in other litigation. [DE-89] at 8–9. First, the fact that these documents may have been produced in other cases does not by itself compel production in this case. *See Chen v. Ampco Sys. Parking*, No. 08-CV-0422-BEN (JMA), 2009 WL 2496729, at *3 (S.D. Cal. Aug. 14, 2009) ("[T]he fact that Ampco produced certain documents in the state cases does not necessarily make them discoverable in this case. . . . Rather, Plaintiff must specifically ask for the documents he wants and be able to demonstrate that the information he seeks is relevant to his claims in this case.") (citing *Moore v. Morgan Stanley & Co., Inc.*, 2008 WL 4681942, *5 (N.D. Ill. 2008) ("just because the information was produced in another lawsuit . . . does not mean that it should be produced in this lawsuit"); *State of Oklahoma ex. Rel. v. Tyson Foods. Inc.*, 2006 WL 2862216, *2 (N.D. Okla. 2006) (denying plaintiff's motion to compel discovery from similar case, finding that the requested discovery "is not necessarily relevant to the current proceeding")). Plaintiffs' briefing fails to identify the nature of the requested documents sufficient for the court to discern their discoverability relative to Defendants' objections. This failure would provide sufficient basis to deny the motion outright. However, Plaintiffs' briefing, [DE-91] at 39, through a footnote refers the court to counsel's affidavit, [DE-92] at 10, n.33, 34, which then refers the court to purported agreements

19

between Patterson Planning Services, Inc. ("Patterson") and Defendants DKM, Ex. 37 [DE-90-37] at 1–4, Norcold, *id.* at 5–8, and Thetford, *id.* at 9, from the late 1990s. Two of documents appear to be separate agreements between Patterson and DKM and Norcold to provide investment assistance and financial planning and management in 1996 and 1997, respectively. *Id.* at 2–8. The third document appears to be a cover letter dated August 28, 1997, referencing an amendment to a service agreement between Patterson and Thetford. *Id.* at 9. Without any further explanation from Plaintiffs these documents do not appear relevant to the claims asserted in this case, and Defendants' objections are sustained.

## III. CONCLUSION

For the reasons set forth above, Plaintiffs' motions to compel and Defendants' motions to strike are allowed in part and denied in part. Defendant shall supplement its discovery responses as ordered herein within twenty-one (21) days of the date of this order.

So ordered, the 1st day of December 2022.

Robert B. Jones, Jr.
United States Magistrate Judge